## WEST MUNCIE STRAWBOARD COMPANY ET AL. v. SLACK ET AL.

[No. 20,406.    Filed December 29, 1904.]

1. PARTIES.—*Defendants.—Joinder.—Tort.*—In an action at the common law for damages caused by various tort-feasors, amongst whom there is no concerted action, and no common design, but whose independent acts unite in their consequences to produce the damage in question, such tort-feasors can not be properly joined as defendants. p. 24.

2. SAME.—*Defendants.—Joinder.—Tort.—Public Offense.*—Where parties do separate, independent acts, and the result of such acts combined creates a public nuisance, such tort-feasors are liable jointly and severally to an individual sustaining special damage therefrom. p. 24.

3. NUISANCE.—*Pollution of Watercourse.*—The pollution of a watercourse by discharging chemicals and other deleterious substances therein, thereby destroying the fish, creating noxious vapors, and breeding large numbers of flies and other insects, rendering such stream unfit for watering stock and other farm purposes, is a public nuisance. p. 25.

West Muncie Strawboard Co. *v.* Slack.

4. PLEADING.—*Complaint.*—*Theory.*—Where a complaint demands damages and prays an injunction, and the trial court construes it as an action for damages alone, there is no reversible error.   p. 25.

5. TRIAL.—*Instruction.*—*Pollution of Watercourse.*—*Additions.*—In an action for damages for the pollution of a watercourse there was no error in refusing to instruct that if such stream was already impure and polluted the plaintiff could not recover unless defendants' acts made such stream more impure than before, since the jury might have understood therefrom that the defendants' acts were lawful, provided other parties were also contaminating such stream.   p. 27.

6. LIMITATION OF ACTIONS.—*Defense.*—A delay short of the statutory period of limitations is no defense to an action for damages for the pollution of a watercourse.   p. 27.

7. NUISANCE.—*Damages.*—*Elements.*—*Right to Fish.*—The right of a riparian owner to fish is a valuable right and is an element of damage in an action for damages for injuries to the land by reason of defendants' wrongful discharge of chemicals and other deleterious matters into the adjoining watercourse, thereby killing the fish and otherwise injuring such land.   p. 28.

8. TRIAL.—*Instructions Requested Covered by Those Given.*—Where instructions requested are substantially covered by those given, there is no error in refusing to give those requested.   p. 28.

9. NUISANCE.—*Damages.*—*Measure.*—The measure of damages to land caused by a nuisance is the difference in value of such land before and after the commission of such nuisance.   p. 29.

10. TRIAL.—*Argument to Jury.*—*Improper Remarks by Counsel.*—Any improper influence on the jury, caused by plaintiff's counsel in his argument to the jury, in saying, "I trust that these gentlemen did not put these interrogatories in here to catch you napping," was removed by the court in telling the jury that such interrogatories were submitted by the court, and that the statement of counsel should have no influence on their minds.   p. 29.

From Henry Circuit Court; *W. O. Barnard,* Special Judge.

Action by John K. Slack and others against the West Muncie Strawboard Company and others.   From a judgment for plaintiffs, defendants appeal.   Transferred from the Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.   *Affirmed.*

*W. A. Thompson, J. W. Ryan, Rollin Warner, A. W. Brady, W. A. Brown, E. H. Bundy, J. C. Blacklidge, C. C. Shirley* and *Conrad Wolf,* for appellants.

*Gray & Taughinbaugh, M. E. Forkner* and *G. D. Forkner,* for appellees.

Dowling, C. J.—This action was brought by the appellees against the appellants to recover damages for injuries alleged to have been sustained by the former by the pollution of certain waterways, on one of which the appellees owned land, and to secure an injunction to prevent the further commission of the acts complained of. Demurrers to the complaint being overruled, the cause was tried by a jury, over the objection of the appellants, and a verdict returned in favor of the appellees for $500, for which sum judgment was rendered against the appellants jointly.

The errors assigned, and not waived, question the action of the trial court in permitting the suit to proceed, and judgment to be rendered against the appellants jointly, in overruling the demurrers to the amended complaint, in submitting the case to a jury, and in overruling the appellants' motions for a new trial.

The amended complaint, in substance, alleges ownership by appellees as tenants in common of farming land upon White river, which stream is a natural watercourse; that prior to the commission of the acts complained of, this stream was well adapted to the watering of cattle and to other agricultural purposes, and was well stocked with fish; that in 1890 the appellant, the Muncie Pulp Company, erected a paper factory upon Buck creek, a tributary of White river, above the land of the appellees, and, at about the same time, the other appellants, respectively, constructed somewhat similar mills at certain points upon White river, also above the appellees' property; that each of the appellants, in the operation of its respective mill, discharged large quantities of chemicals and other deleterious substances into the waters of Buck creek and White river, thereby destroying the fish in said streams, creating noxious vapors, and breeding large numbers of flies and other insects; that the refuse from these three factories

intermingled in the waters of White river, above the land of the appellees, and thence flowed in an indistinguishable mass over and upon said land, rendering the water of the stream unfit for stock purposes, and causing deposits of sediment upon the appellees' premises, thereby killing vegetation and damaging the soil.

1. Objection is made by the appellants that the acts alleged, if done at all, were performed severally and independently by them, and hence there can be no joint liability therefor. It is probably true that an action at law for the recovery of money damages, as distinguished from a suit in equity, can not be maintained jointly against various tort-feasors among whom there is no concert or unity of action and no common design, but whose independent acts unite in their consequences to produce the damage in question. *Miller* v. *Highland Ditch Co.* (1891), 87 Cal. 430, 25 Pac. 550, 22 Am. St. 254; *Lockwood Co.* v. *Lawrence* (1885), 77 Me. 297, 52 Am. Rep. 763; *Sloggy* v. *Dilworth* (1888), 38 Minn. 179, 36 N. W. 451, 8 Am. St. 656; *Martinowsky* v. *City of Hannibal* (1889), 35 Mo. App. 70; *Chipman* v. *Palmer* (1879), 77 N. Y. 51, 33 Am. Rep. 566; *Blaisdell* v. *Stephens* (1879), 14 Nev. 17, 33 Am. Rep. 523; *Long* v. *Swindell* (1877), 77 N. C. 176; *Little Schuylkill Nav., etc., Co.* v. *Richards* (1868), 57 Pa. St. 142, 98 Am. Dec. 209; *Draper* v. *Brown* (1902), 115 Wis. 361, 91 N. W. 1001; *The Debris Case* (1883), 16 Fed. 25. And see *Sellick* v. *Hall* (1879), 47 Conn. 260.

2. A distinction, however, is recognized between such acts which are wrongful only because injurious to individual rights, and those which combine and constitute a public nuisance. *Simmons* v. *Everson* (1891), 124 N. Y. 319, 26 N. E. 911, 21 Am. St. 676; *Irvine* v. *Wood* (1872), 51 N. Y. 224, 10 Am. Rep. 603; *City of Valparaiso* v. *Moffitt* (1895), 12 Ind. App. 250, 255, 54 Am. St. 522.

In the former class of cases each separate wrongdoer is chargeable with his own acts alone, in the absence of a

joint purpose among the participants; in the latter, each may be answerable in a joint and several action not only for what he himself does, but likewise for the acts of those who, with him, violate public as well as private rights. If a party deliberately places himself in opposition to the entire community by performing an act which, in combination with the independent wrongful acts of others, violates an express statute and creates a public nuisance, he is not in a position to assert that he should be held responsible to individuals specially damaged for only the actual loss he alone has occasioned them. He must have anticipated the natural and probable consequences of his acts, namely, the violation of a public right; and the public interest requires he shall, if need be, even in a civil action, bear the full burden of the wrong he has assisted in inflicting. Nor is it material that his act of itself, and without reference to the coöperation of others, would create a public nuisance. He must be deemed to know, in a case such as the present, that, if his wrong combines with similar acts of third parties, the result will be to intensify the public and private injury. The welfare of the community demands that he who thus intentionally and aggressively assists either in creating or maintaining a public nuisance in defiance of positive enactments shall answer in civil damages for all injurious consequences proximately resulting therefrom to private individuals who bring themselves within the requirements of the law.

3. There can be no question but that the acts of the appellants constituted a public nuisance (§2154 Burns 1901, §2066 R. S. 1881; *City of Valparaiso* v. *Moffitt, supra*), and hence they could be held jointly and severally liable at the suit of parties specially damaged.

4. The second and third grounds relied upon for reversal are that the primary purpose of the action was to obtain an injunction, and that the prayer for damages was merely incidental; that the complaint was insufficient as an

application for injunctive relief, and, even if sufficient, the cause was one triable by the court and not by a jury. The trial court evidently construed the action as a suit at law for damages, and ignored the prayer for an injunction. In so doing, we can not hold that there was reversible error. As was said in *Comegys* v. *Emerick* (1893), 134 Ind. 148, 152: "A complaint must be construed according to its general scope and tenor, as appears from the averments, and the prayer will not control and determine its validity. When the trial court has placed a reasonable construction upon the averments of the complaint, which might bear two constructions, this court will be disposed to adhere to the construction which it received by the trial court." See, also, *Davis* v. *Severance* (1892), 49 Minn. 528, 52 N. W. 140. Assuming that the complaint sought a recovery of legal damages, its averments were ample to constitute a cause of action, inasmuch as it was alleged that the appellants were, by their manufacturing establishments, polluting the streams in question with large quantities of injurious substances, which, mingling together, and depositing themselves upon the appellees' land adjoining White river, rendered it less available for purposes of agriculture and stock raising, and as a place of residence. *Weston Paper Co.* v. *Pope* (1900), 155 Ind. 394, 56 L. R. A. 899; *Muncie Pulp Co.* v. *Martin* (1899), 23 Ind. App. 558; *Indianapolis Water Co.* v. *American Strawboard Co.* (1893), 53 Fed. 970.

The last assignment of error is based upon the overruling of appellants' motions for a new trial, involving, among other reasons, the giving of certain instructions, and the refusal by the court to give those tendered by the appellants. Of the latter, the eighth, ninth, tenth, eleventh, fifteenth, sixteenth and seventeenth all proceed upon the theory that the appellants' liabilities are several and not joint, which, as shown above, is an erroneous assumption. Hence the court properly refused so to instruct the jury,

5.  By the twelfth, thirteenth and fourteenth instructions offered by the appellants, it was, in effect, stated that if the streams in question were already impure and polluted before the appellants deposited their refuse matter therein, the appellees could not recover, unless it was shown that the acts of the appellants rendered the waters of such streams more impure than they would otherwise have been. If so instructed, the jury might well have understood that the acts of the appellants were lawful, provided these watercourses were being contaminated by other parties also. Such is not the law.  As stated in *Weston Paper Co.* v. *Pope, supra,* at page 402: "The fact that a watercourse is already contaminated from various causes does not entitle others to add thereto, nor preclude persons through whose land the water flows from obtaining relief by injunction against its further pollution."  To the same effect, see *Dennis* v. *State* (1883), 91 Ind. 291, 293; *Strobel* v. *Kerr Salt Co.* (1900), 164 N. Y. 303, 58 N. E. 142, 79 Am. St. 643, 51 L. R. A. 687.  So far as the instructions in question, as well as the nineteenth and twentieth, attempted to direct the jury in determining the measure of damages, they were sufficiently covered by the third, sixth, ninth, tenth and sixteenth given by the court, in which the liability of the appellants was confined to the actual damage inflicted upon the appellees, consequent solely upon the appellants' own acts.

6.  By the twenty-first and twenty-second instructions tendered by the appellants and refused, the jury were told that, both in arriving at a verdict and in assessing the damages, they might consider the failure of the appellees, before instituting this suit, to complain to the appellants concerning the acts of the latter in polluting the streams in question.  In so far as these instructions suggested that delay on the part of the appellees, short of the statutory period of limitation, constituted a defense, they were clearly erroneous; and, as bearing upon the matter of dam-

ages, their rejection was harmless, since the jury were distinctly informed by the court that, if they found in favor of the appellees, there could be a recovery of such an amount only as would compensate the appellees for the injury, if any, which they sustained by reason of the acts complained of.

The twenty-third instruction requested by the appellants was covered by the fourteenth given by the court, which informed the jury that they might consider the interest which any witness had in the result of the suit, in determining the weight to be given to his testimony.

7. The twenty-fourth instruction, which the appellants tendered, informed the jury that, "If you should find a verdict in favor of the plaintiffs, you can not include in your assessment of damages any amount for any fish which were or might have been in White river." This was properly refused, as the jury might by it have been misled into assuming that the right to enjoy the waters of the stream in question for purposes of fishing was not a substantial right possessed by the appellees as owners of abutting property, and that an interference with it was no element of damage to the riparian land.

8. The matters referred to by the twenty-fifth and twenty-sixth instructions requested by the appellants were sufficiently covered by that given by the court in which the jury were directed that, in the event they returned a verdict for the appellees, they were to assess such damages as should compensate them for the injury actually sustained because of the acts of the appellants.

The twenty-seventh instruction tendered and refused purports to define the rights of a riparian owner in the reasonable use of a stream for manufacturing purposes, which subject was properly presented by the court in another instruction given; and the same may be said of the twenty ninth, thirtieth and thirty-first, which restricted the appellees' recovery to damages resulting to them from the

acts of the appellants. The court, in its instructions numbered twelve and sixteen, fully presented the law upon this subject.

Of the instructions given by the court and excepted to by the appellants, the third and sixth correctly charged the appellants with joint and several liability, and, in so far as the sixth instruction failed to indicate what would constitute a justification for the acts complained of, it was adequately supplemented by a subsequent charge.

The fourteenth instruction, if open to any criticism because indicating that the jury are under a duty to consider the interest a witness has in the result of the suit, was rendered entirely harmless by the additional instruction that the jury were the exclusive judges of the evidence and the credibility of the witnesses.

9. ' Counsel for appellants are in error in asserting that instruction numbered sixteen assumes certain facts to have been proved against them. The jury could not have been misled by this charge into presuming that the appellants caused a change in the condition of the streams, as counsel claim, but were, in effect, directed to compare the value of the appellees' land prior to the acts complained of with its value after their commission, and to assess such damages as were sustained by reason of such acts. In this the court did not err.

We have examined the several rulings excepted to, in the admission and rejection of evidence, and are satisfied that none of them involves prejudicial error upon which this court would be justified in reversing the judgment.

10. The alleged misconduct of counsel was not so flagrant as to require correction by the trial court, and, whatever undue effect might have been produced upon the jury by counsel's saying, "I trust that these gentlemen did not put these interrogatories in here to catch you napping," was removed by the court's instruction that the interrogatories were submitted by the court, and that any statement

of counsel that they were submitted by one of the parties should have no influence upon their minds.

Finding no error in the record, the judgment is affirmed.